23-3085 Firexo Inc v. Firexo Grp Ltd. Argument not to exceed 15 minutes per side. Mr. Balazs, you may proceed for the appellant. Good morning. Good morning, Your Honors. My name is Paul Balazs and I represent Firexo Inc, the appellant in this case. And I would like to reserve five minutes for rebuttal. There are three principal issues in this case to be decided. The first is, does English law apply to the interpretation of the shareholders agreement referred to as the JVA? And more importantly, does it apply to the forum selection clause that is part of the shareholders agreement? The second is, if it does apply, would appellant Firexo Inc as a non-signatory to the shareholders agreement be bound by its forum selection clause? And the third issue, if English law is determined by this Court not to apply to the interpretation of the shareholders agreement, does federal law under the Kraft test require that Firexo Inc be bound in the context of the litigation filed in the district court? Now, all of those issues were presented to the lower court in the limited amount of briefing that was permitted by the court. We were limited to 10 pages for a number of very complex issues. But they were all presented to the district court in its decision. Most of those issues were not discussed at all, and to the extent they were, they were given a short shrift without any analysis that was in any way meaningful. With respect to the question of whether English law should apply to the shareholders agreement, there is a circuit split. There are two circuits, at least one, the ninth, that have determined that, well, a number of circuits have determined that in interpreting a forum selection clause, when there is both a forum selection clause and a choice of law clause, as is the case here, that federal law applies to the enforcement of the forum selection clause. And that is something that conforms with the procedural aspects that are important to the operation of the federal court system. The forum selection clause really gets down to an issue of venue, which is the proper venue in which to have the case heard. The forum selection represents the party's determination as to which one that should be. And the sixth circuit in Wong made very clear that that should be determined under federal common law. And that is how it is done. But the sixth circuit has not determined, contrary to what the lower court assumed, whether or not the federal common law should apply when there is a choice of law provision in the contract that is at issue. And there is a circuit split on that issue. The ninth has determined that federal law should apply. But every other circuit that has looked at this issue has ruled to the contrary. Including the second circuit in Martinez, the third circuit in McGraw Hill, the seventh circuit in Jackson, the eighth circuit in Dunn, the fifth circuit in Barnett, and also the fourth circuit in Arbemore. Two other circuit decisions, the tenth circuit in Yavuz and the DC circuit in Milanovich, have imposed a broader sweep of the application of the law of the contract. In other words, the law that is selected by the parties. And in those two cases, those circuits have held that it would apply even to the determination of the enforcement of a foreign selection provision. So the significant force of the decisions throughout the circuits in the federal system have come down on the side of a determination that when there is a choice of law provision in a contract, that it determines the interpretation of any parallel foreign selection provision. Now in this case... Your point is if there's a choice of law provision, then we apply the choice of law provision not only to determine whether a non-signatory comes within the scope of the contract. In other words, maybe you're a non-signatory, but you're a third-party beneficiary. And so you might be within the scope of the contract in the first place. What I'm hearing you say today is that the choice of law provision governs not only that, but also whether these factors that are external to the contract. So for example, whether it was entered into under duress, or whether it was foreseeable that whether the party is closely related. All of these things would be governed by the substantive law that the parties chose in the first place. Yes. It would not apply to the enforcement of the foreign selection provision, but it would apply to anything related to the interpretation of the contract. Oh, so it does not apply to the enforcement. Correct. So in other words, if we determined that a contract was entered into under duress, I know those aren't the facts of your case, but that would be governed by federal law, not by the substantive choice of law provision. But why is that? Different jurisdictions could have different law about what constitutes duress. Generally, whether or not there is anything that is interpretive under the contract. In other words, if you have to determine the party's meaning when they entered into a contract, then in the context of a diversity case, the cases consistent with what the Supreme Court said in Erie, have determined that as a matter of respect for the independence of the states, as well as respect for the intention of the contracting parties, that should be a guide for the entire contract, except for an issue that is procedural because the interpretation is substantive and substantive issues are contract issues that are more properly left to the state common law or the state legislative law and or the intention of the parties. If they specify in a contract what their intention is with respect to which law should apply. So enforcement really gets down to a different set of issues and it includes whether there is another forum, I suppose duress might be an issue that would be part of the enforcement, the question of whether or not the contract should be enforced, but any issue that goes purely to the question of whether the contract should be enforced, at least in the Sixth Circuit, would be guided by federal law, which of course favors the enforcement of forum selection clauses and that is part of the federal common law. This joint venture agreement has a forum selection clause that says that each party agrees that the courts of England and Wales shall have exclusive jurisdiction to settle the dispute. So that's clear, I think your argument is that your company that was actually established by this joint venture agreement, I recognize that there was a corporation existing before, but this joint venture agreement really is the sole purpose of your corporation. The only argument is whether it's closely related, isn't it? Whether your client is closely related to this contract and therefore is bound by it? The closely related test does not apply, Your Honor, if English law is applied. What applies? The closely related test would not apply to this case if English law applies. If English law applies, okay. So what are you saying, that the district court cannot determine whether it has jurisdiction or not? That it has to be decided by, the jurisdiction has to be decided by the English courts? The applicability of the forum selection clause is not decided by the English courts, but it's decided by, the contract had a choice of law provision as well as a forum selection clause. Yes, it has a choice of law and a forum selection committee. Actually, forum selection says that exclusive jurisdiction, so the United States courts don't have jurisdiction and that's the fundamental question in every case. Do we have jurisdiction, subject matter jurisdiction over this case? You're saying that subject matter jurisdiction cannot be decided by the district court here? The district court did have subject matter jurisdiction. All right, well how does it have it? If your client is bound by this agreement, how is their jurisdiction? Because the forum selection clause doesn't apply under English law and neither does any other. Okay, all right, so you're saying district court cannot decide its jurisdiction here? The court can determine its subject matter jurisdiction, but if it applies English law, then the forum selection clause doesn't apply, because appellant Fire XO Inc. is not a signatory to the contract. Okay, all right, I think you're confusing choice of law with forum selection, but I guess that's your argument. I'm just troubled. Just to tell you, I think the case rises and falls on whether your client is closely related. I'm sorry, whether my client is closely related to the parties to this agreement and therefore is bound by the agreement. I'm just telling you, that's the way I see the case. You want to argue other issues, fine, but I think if you want to prevail, you may want to address my argument. That was the third issue that I was going to go to. The closely related test does not apply here. If you look at the cases in which the closely related test was applied, including all of those, all of those that were cited by the district court, they all have something that's missing in this case. There's nothing in the JVA, in the shareholders agreement, that serves as the basis for the litigation that was filed in the district court. If we had relied on that, it would have been dismissed as a matter of course, because it fails to state a claim. There's nothing in the shareholders agreement that would support any of the claims that we have raised in our complaint in the district court. Your complaint is a breach of contract, is it not? Fraudulent inducement, that's correct. It has nothing to do with the joint venture agreement? That's correct. The joint venture agreement was a shareholders agreement. And did it establish the Fire XO Inc.? Yes, actually it was already established, but it did establish the company, but it did not provide any language that would, I mean it didn't say anything about the distribution agreement. So you're saying that the contract that you allege is breached is separate from the JVA? That's correct. Our issue, though, is whether the JVA forum selection clause applies to your client. And I guess you're saying because you're not suing under it, that it doesn't apply? I mean I don't quite follow that. That's correct, Judge. So if you look at, I mean the cases that were addressed by the district court were Hoogle, Manetti, Marano, and Lipcomb. Those are the ones that found a non-signatory bound by the forum selection clause. In every single one of them, the interpretation of the contract containing the forum selection clause was necessary to resolution of the claims. In every single one. So in our instance, and the cases break down into a couple different categories. Either the contract containing the forum selection clause must be reviewed and interpreted in order to determine whether there's liability under the claim. So in this case we're claiming that the products were defective and the representations related to them were false. Either there has to be an interpretation that's necessary under the contract containing the forum selection clause, or there has to be some effort, some coercion between a non-signatory and a signatory to create a separate company in order to avoid the terms of the main contract. And that usually arises when there's a non-compete, for example. So if an employee signed a non-compete agreement and then created a separate corporation knowing about that agreement, and then went into business with a relative, which is what happened in one of these cases that was cited, their son. All of them, the son was not a signatory, but the claims were based on the contract which contained the forum selection clause. That had to be interpreted. I think I understand your argument. You've got five minutes rebuttal. You can either use it now or you can save it. Unless there's some other questions, I'll save it. All right. Thank you. Let's hear from the affilee, Group Limited. Good morning. Good morning, Your Honors. May it please the Court, my name is Jason Blake, Counsel for Appellee FireXO Group Limited. Judge Griffin, to answer your question about whether or not the only thing this court needs to decide this morning is whether or not the closely related test applies, the answer to that question is unequivocally yes. So if that is the answer, what is your best basis for coming up with the closely related test? Sure. There's 30 years of precedent, Your Honor. So when did it start? Well, Hugel is really the genesis case that laid out a fantastic example of how the closely related test applies. Since that time, virtually every circuit has adopted some version of that test. You mean how it applies and what it is? Sure. The closely related test essentially determines whether or not a non-signatory is closely related to the contract or the parties, such that in fairness, it's fair to apply a form selection clause in that contract to the non-signatory. That is the most broad overview of what the closely related test is. Since that test was laid out in Hugel, which is in our brief, is on all fours with this case, remarkably similar, eerily similar, including the fact that it also involves a contract applying UK law, and that's a case out of the Fifth Circuit, and that's a case that's explicitly referenced, in your opinion, Baker. You'll note that in Baker, we didn't give any real basis for that doctrine coming up. It is noted. Zero analysis, as I recall. It is. And since that time, in the last 25 or so years, there's been many courts that have given intense analysis to that issue. And the case we cite in our brief, which Judge Zuhairi applied, is Framlink. And that's a case out of the Fifth Circuit a little more than a year ago. Right, but in Framlink, the Fifth Circuit says, well, what's this closely related test? It's kind of made up. There's a lot to question about it, but every other circuit's done it. We don't want to create a split, so we'll do it too. And I think, aside from the dicta about whether or not the closely related test, or whatever that judge's opinion, that panel's opinion was about the closely related test, they did in fact apply it. They laid forth a simple, easy to apply test. But that's not the same as an intense analysis of where it came from. But I think, yeah, I think the question is, maybe every other circuit has done this, but sometimes, you know, one court says something, and then the others say, oh, yeah, that's an easy answer, and they just cite that as authority. And I think we're trying to figure out, what's the basis for this test? I mean, there's ordinarily no federal common law. There's no federal common law contract unless Congress tells us to create one, like under ERISA. So where does this thing, what is this? Well, let's be crystal clear what appellant is arguing. Appellant is arguing for this court to adopt a test which no circuit has adopted. The case law which appellant has just cited, the circuits, about the circuit split, that does not apply in the non-signatory context. Not one case has ever applied this test which appellant is proposing in this context. Not a single one. Every case that has looked at this issue has done so from the context of a closely related analysis. And sometimes that closely related analysis, as your Honor mentioned, is not in-depth, but other times, like in Framlink, it is very in-depth. So what would be the, I understand no court has ever done this, but unless we're bound by Baker, which maybe we are, and I'd be happy to adopt the closely related test here. But if we're not, you know, it's open to us. So what would be the harm of adopting the test that your opponent proposes? Well, that would create a circuit split, your Honor. And that's the only harm? It's not just Baker. There's Baker, there's Wilson, there's Ingram Barge. Okay, right, there'd be a circuit split. Well, those are three cases just from the Sixth Circuit, your Honor, where the Sixth Circuit has analyzed the closely related test and done what we're proposing. In unpublished cases other than Baker? I believe you're correct, your Honor. And since, just in the last year, since Framlink, there's been 17 district courts all across the country who have applied some version of the closely related test, including seven which have explicitly applied the Framlink factors. Okay, so I hear the harm is disruption, right? We have a uniform federal test. The federal interest in enforcing foreign selection clauses is an important federal interest. So we should do that. And to not do that would cause some kind of disruption and put us as an outlier. Is that the only harm? I mean, if we adopted his substantive test, which seems to be look at the scope of the contract first, see whether somebody is covered by the contract in the first place, like as a third party beneficiary or something, and if not, then move to the foreign selection. I mean, are we then, what harm other than disuniformity are we creating? Well, I would also add to the bucket of harms is the unwieldiness of the test proposed by Appellant. Their notion that applicability and enforceability are separate components doesn't even make a whole lot of sense. And I heard this panel struggling with what he was trying to articulate. The Appellant's argument is that because of England's general rules of privity, none of the provisions in the joint venture agreement are enforceable against the joint venture. By the way, his analysis of English law is not correct. But they call that applicability, not enforceability. And enforceability, which for some undisclosed reason they put after applicability, apparently is where the closely related test comes in, even according to Appellant. Wasn't applicability just about interpreting the contract? What do these words mean? And enforceability is, was the contract entered into under duress? Was the contract unconscionable? Things that are external to the writing itself. Well, if we're looking to whether or not we're trying to determine what the contract means, Judge Griffith said it's very clear what the contract means regarding the foreign selection clause. The parties, Scotsmiths, who let's not forget is the president, the majority shareholder, the chairman and the person who's directing this litigation by admission, he signed this agreement. And it said the parties will conduct this business in accordance with this agreement. And then after Scotsmith goes to England, sues under this contract FGL, my client XO to sue on matters related to this contract in Ottawa County that was then removed to Toledo, Ohio before Judge Zuhairi. So if we're looking at what the contract means, the contract is very clear what it means. Exclusive jurisdiction exists in the UK. May I ask another question about jurisdiction? Of course. You said that word. Your opponents brief on page one says that your client is an English limited liability company with its principal place of business in the UK. A US LLC, in order for there to be complete diversity, we'd have to know the domicile of each of its members. So is a UK LLC the same as a US LLC? Do we need to know the domicile of each of its members? I just am ensuring myself that we have complete diversity. Yes, I get the question. I don't know the answer to your question from whether or not there are members for the limited liability LLC essentially in England, whether they have the same membership or whether it's shareholders. My belief is it's shareholders, Your Honor. To me that seems like an important question for us to know because if there are, I mean I suppose that you'd have to have an Ohio member in order for there not, or a Florida member, in order for there not to be complete diversity. I can guarantee this Court, I can represent this Court, that there are no US based members to this company. And certainly no one else in Ohio. I believe Scott Smith is a shareholder of Fire Exo Group Limited, which might answer the question kind of in reverse, that the type of ownership you have in the English company is not a LLC type membership. It's more akin to a public company. I see. So getting back to appellant's test and how it doesn't work and one of the harms is that determining whether the form selection clause applies to the non-signatory is the and it has a choice. It can do what appellant proposes, which is something no circuit court has ever done. Including in context where the contract involves a choice of law provision for the UK. Or it can choose to adopt some test like the Fran Link test, which is simple and easy to apply. We've asked appellant on three occasions, just give us a single case where what you are proposing is done. And not once have they come up with a case because it doesn't exist. What appellant is actually trying to argue here is that if the form identified in the contract does not recognize the closely related test, then the US Court should abandon the closely related test altogether. That is a snake swallowing its own tail. It does away with the entire closely related test. And that's not the law here and that's not the law anywhere else. And whether you call the closely related test applicability or whether you call the test enforceability, the point is that when determining whether to enforce the form selection clause against a non-signatory, courts should look to see whether in fairness the non-signatory is closely related to the contract or the parties. Indeed, if there's any trend in the law, and I just said 17 cases just in the last year, if there's any trend in the case law, it's for application of the closely related test. And the Fran Link factors, which are spelled out, provide a simple way to apply that test consistent with nearly three decades of jurisprudence. And there's nothing in this case which should cause the court to depart from those three decades of law. Let me ask you this question because I think the question Judge Batchelder was asking is, yeah, where does this Kraft test come from? What's its foundation? There's no federal common law. Why are we bound by it? Otherwise, we'd have to just say, well, we're going to do the same thing other courts do because other courts do it, which isn't the greatest answer. But I'm wondering whether we are bound by Baker to apply the Kraft test. Now, Baker characterized the district court as relying on Hugo, which held that to bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound. And then we said, after reviewing the record in the law, we find ourselves in agreement with the district court and hold the defendants may not enforce the forum selection clause. So in other words, in Baker, did we adopt the Kraft test as the test? And just say it wasn't met? In other words, then the answer to why apply the Kraft test is because Baker tells us so. I think the answer to your question is that since Baker, there has been significant development in how to apply the Kraft test to achieve what you just read, right? The four factors laid out by Fran Link are a simple way to do that. And that's what judges are doing. Certainly. Certainly, Your Honor. And I think applying it is very easy. I think the does it apply question is answered by the 30 years of case law that have looked at this issue and they've all done it. The point is we're only bound by our case law and the U.S. Supreme Court's case law. In this court, we have Baker, which I just offered to you on a platter to say, do you think we're bound by this case? And you say, no, there's 30 years of stuff that came after. OK, maybe that's right. If we're not bound by Baker, we can do whatever we want. Right? The Supreme Court hasn't told us anything. I think the circuit is bound by Baker to the extent it is a rejection of what appellant is proposing. Because in Baker, it's important to note, the court did not engage in a let's go look at this foreign jurisdiction or this out-of-state or this non-federal law to try to determine whether or not these parties are closely related. That's not what Baker did. So your point is, Baker said the Kraft test is the test. The Kraft test did not apply, I mean, it applied, but the person who wanted to enforce the Foreign Selection Clause couldn't meet the standards of the Kraft test, and so it's lost, but that doesn't mean it's not the test. No, in fact, that's an example of a good test. A test where the answer is always yes is not a test. It's a check the box. And the Fran Lake factors, if you apply them like the 17, well, the numerous courts in the last year, 7 or 8 courts in the last year, and the 17 courts that have attempted to apply the closely related test, some say it applies in that circumstance. Some say, no, this particular non-signatory doesn't meet that test. Let me just wrap up and then I will stop. Judge Zuhairi properly applied the Fran Lake factors to this case to determine that appellant was closely related to the joint venture. This case presents a perfect opportunity for the Sixth Circuit to formally adopt the Fran Lake factors, which is already consistent with prior holdings in the ever-growing body of case law around the country. Judge Zuhairi's dismissal of the appellant's complaint should be affirmed. Thank you. Any further questions, Judge Batchel? Millions, but I don't think I'm going to bring them up now. Okay, Judge Larson. Thank you, Mr. Blake. Thank you, Your Honor. All right, rebuttal. Thank you, Your Honor. Do you have a case that adopts your test? Which one? Do you have a case that supports your position? Absolutely. They were just arguing that you could not cite a case. He said no court in the United States. Tell me if he's wrong. Martinez is certainly on point. First of all, you start with Baker. Baker says you have to determine applicability before you get to enforcement. And he said it, I think, pretty explicitly. But it limited the question of applicability to third parties. Baker is your best authority? No, that's one authority. What is your best authority? That's a simple question. Well, Martinez is a very strong, McGraw-Hill in the Third Circuit, Jackson in the Seventh Circuit is very strong. They all pretty much use the same language, Judge, that you use the law of the contract to determine applicability and you use the federal common law to determine enforceability and that you can't put the horse before the cart. And with respect to the Franklin test, Judge, if you look closely at Franklin, the circuit, I think it was the Fourth Circuit in that case, was very concerned about applying the Kraft test and it was pretty explicit in saying that it was loath to do so because for a number of reasons, including the fairness, uniformity, and it applied it in, again, like these other cases I mentioned, in a very narrow circumstance. And that's where there was direct reliance in the litigation and the claims that were brought on the contract that contained the foreign selection clause. And there isn't any case that I have read, and I've read a lot more than I'd like to think about, that hasn't adopted that analysis and gone into considerable detail to look at the claims, to determine how they compare with the language of the underlying contract with the foreign selection clause and whether that contract has to be interpreted in some way in order to determine the liability issues. And that's not the case here. It's simply not. You know, you've got a non-signatory third party who's filed suit in the United States under a separate agreement that deals with what happened after they entered into, gained the right to become a distributor. And the separate agreement is your oral contract? Yes. And there's no dispute that the way that this company, Fire Expo Group Limited, did business. There isn't any dispute that they separated it out. Their business model was to have investors, investor partners, and then separately distributor partners. So the shareholders agreement was just an investment vehicle. And all of its terms dealt with, I mean, it was just an operating agreement. You know, how do you keep the books, and how are the shares divided up in exchange for your investment between Fire Expo Inc. and Scott Smith. It had nothing to do with whether Fire Expo Inc. would have the right to act as a distributor. It didn't describe anything, any power or authority that Fire Expo Inc. had. It certainly did not provide the basis for any kind of complex commercial agreement which was necessary in order to begin actually distributing and marketing in the United States. And that's why they divided it up into two separate pieces. And it didn't have to be the same person. We could have had somebody from South America who decided they wanted to be a distributor in the United States. They would have entered into a separate agreement with Fire Expo Group Limited and they would have become a distributor under whatever terms were worked out. So, you know, the fact that there was that division is significant for a number of purposes. Not the least of which is that the claims are based on that separate contract. There are no claims in this district court case that are predicated on the shareholders agreement. Nor could there possibly be. Okay, thank you counsel. Any further questions? No, thank you.